GLOUCESTER WATER SUPPLY CO. v. FREEMAN.

(District Court, D. Massachusetts. February 20, 1914.)

No. 112.

**1. EMINENT DOMAIN (§ 230*)—PROCEEDINGS TO ASSESS COMPENSATION—COSTS AND FEES—CONTRACTS.**

The parties to a proceeding to assess the compensation to be made for property taken by a city, commenced while the law required payment for the commissioners' services to be made by the parties, could contract with the commissioners for the payment of reasonable compensation.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 584; Dec. Dig. § 230.*]

**2. EMINENT DOMAIN (§ 230*)—PROCEEDINGS TO ASSESS COMPENSATION—COSTS AND FEES—CONTRACTS.**

Assumed that, under a contract by the parties to a proceeding to assess compensation for property taken by a city to pay the commissioners reasonable compensation for their services, where it was the established custom that such compensation should be paid in the first instance by the prevailing party and apportioned between the parties as might be eventually determined, the prevailing party who paid such compensation had a right to reimbursement from the other party to the extent of its share.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 584; Dec. Dig. § 230.*]

**3. EMINENT DOMAIN (§ 243*)—RES JUDICATA—MATTERS CONCLUDED.**

A proceeding to assess the compensation for property taken by a city was sent back by the Massachusetts full court for hearing on the amount to which the petitioner was entitled by its payment of the costs charged by the commissioners and came on for hearing before a single justice. Pending the proceeding the compensation of commissioners in such cases was by statute made chargeable to the county, and at the hearing the counsel for the parties agreed that if $8,750 could be allowed the commissioners from the county treasury as compensation the parties would adjust the rest of the commissioners' bill between themselves, and the court decreed payment of such amount by the county. The city repudiated the agreement of its counsel, and a decree was made vacating the first decree and recommitting the report to the commissioners to report the amount of their compensation to be paid by the parties, which decree, on an appeal by the city from the decree "ordering that the report * * * be recommitted," was reversed on the ground that in the absence of a contract, as to which no evidence was taken, though the parties had contracted to pay the commissioners reasonable compensation, the compensation was to be fixed by the court and paid by the county. *Held,* that the decree ordering payment of $8,750 by the county was not conclusive that such amount was reasonable compensation under the contract.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 551, 627–629, 700; Dec. Dig. § 243.*]

**4. EMINENT DOMAIN (§ 263*)—APPEAL—REVERSAL—EFFECT.**

The reversal of such second decree affected only the part appealed from, and the part of such decree vacating the prior decree was not reversed.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 687; Dec. Dig. § 263.*]

**5. JUDGMENT (§ 956*)—CONCLUSIVENESS—MATTERS CONCLUDED—EVIDENCE.**

The opinion accompanying the reversal of a decree may be looked at to determine on what grounds the reversal was made and to what extent the decree below was affected.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1822–1825; Dec Dig. § 956.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

6. EMINENT DOMAIN (§ 230*)—PROCEEDINGS TO ASSESS COMPENSATION—FEES—
PAYMENT UNDER DURESS.

In a proceeding to assess compensation for property taken by a city, the payment of the commissioners' fees by the prevailing party, before the report was filed, was not made under duress, since the court could have made enforceable orders directing the commissioners to submit or file their report and settling their compensation, and such party was therefore not compelled to pay such fees to obtain the filing of the report.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 584; Dec. Dig. § 230.*]

7. PAYMENT (§ 85*)—RECOVERY BACK—PAYMENT UNDER MISTAKE.

Where by statute the fees of the commissioners in a proceeding to assess compensation for property taken by a city were chargeable to the county, a belief by the prevailing party and the commissioners, at the time of the payment thereof by such party, that it was bound to pay them and that it would be reimbursed for a part thereof by the other party, was not such a mistake of fact as entitled such party to recover back the fee so paid, where the commissioners could not then have recovered the fees from the county or the other party.

[Ed. Note.—For other cases, see Payment, Cent. Dig. §§ 272–281; Dec. Dig. § 85.*]

At Law. Action by the Gloucester Water Supply Company against John R. Freeman. Judgment for defendant.

Storey, Thorndike, Palmer & Dodge, of Boston, Mass., for complainant.

Samuel J. Elder, of Boston, Mass., for defendant.

MORTON, District Judge. [1] At the time when the commissioners accepted the appointment and did much of the work, the law was that payment for their services should be made by the parties to the litigation; and the parties and the commissioners so understood it. They also understood that the charges of the commissioners were to be reasonable considering the character and amount of work which should be done, the standing and experience of the commissioners, and the charges made by commissioners in other similar cases. On this understanding, which was never put into explicit language either oral or written, the parties to the original suit and the commissioners proceeded. The plaintiff here contends that upon the agreed facts no actual contract of any kind existed in reference to the payment of the commissioners, that the parties and commissioners acquired merely the rights and obligations which by law arose out of the situation, and that these rights and obligations might and did vary subsequently with changes in the law applicable thereto. The defendant contends that there was an actual contract whereby the parties agreed to pay the commissioners reasonable compensation. The right of the parties to make such a contract clearly existed.

"If the parties choose to make special contracts with commissioners in regard to their compensation, these contracts are enforceable." Knowlton, C. J., Gloucester Water Supply Co. v. Gloucester, 185 Mass. at page 537, 70 N. E. 1015.

By the act of 1899 (which was passed while the matter was pending before the commissioners), it was provided that the compensation of

commissioners like these should be paid out of the county treasury at a rate not exceeding $15 per day. The correspondence and briefs of the parties after this act was passed (St. 1899, c. 458), and before the $25,000 payment, show clearly that they understood that the commissioners were not limited to the maximum compensation fixed thereby, and that the parties were to pay such further sums as would be required to make up reasonable compensation. This position seems inconsistent with the idea that the rights of the commissioners to compensation rested solely upon the legal implications arising out of the situation. The question whether or not there was a contract between the parties and the commissioners for the payment of reasonable compensation was never heard and determined in the Massachusetts court. No evidence was ever taken on that issue. The statement in the opinion of the Supreme Judicial Court that, "Presumably it (the payment of $25,000) was made provisionally subject to the action of the court upon the validity and legal effect of this part of the award," is not a finding of fact.

[2] It seems to me that upon the agreed facts there was, at the time when the commissioners accepted their appointments, more than a mere duty implied by law requiring the parties to pay to them such compensation as the court might subsequently order. I find and rule that there was an actual, tacit contract between the plaintiff, the city of Gloucester, and the commissioners, obligating the first two parties to pay the commissioners reasonable compensation for their services, which incorporated the established custom that such compensation should be paid in the first instance by the prevailing party and apportioned between them as might be eventually determined. See memorandum of Mr. Justice Loring, Exhibit A, p. 1. Under this contract the payment of $25,000 was made by the plaintiff, on its own account and upon the account of the city of Gloucester, and carried with it the right to reimbursement from the city to the extent of the city's share. This right of the plaintiff to reimbursement was explicitly recognized by the Supreme Judicial Court; for, in sending back the case for further hearing after the first appeal, the court in banc said:

"The case is to stand for hearing on the amount to which the petitioner is entitled by its payment of the costs charged by the commissioners." 179 Mass. 384, 60 N. E. 982.

Their bill having been paid, the commissioners were not concerned in the matter of apportionment. The payment of $25,000 is said by the plaintiff to have been treated by the commissioners, "not as a final payment from a debtor, but as an advance." (Sup. Brief for Plaintiff, p. 8.) I do not so regard it, except perhaps to the extent to which the amount charged might thereafter be held excessive. The suggestion in the opinion of the Supreme Judicial Court (185 Mass. 537, 70 N. E. 1015) does not seem to me to preclude the view which I have taken. It is also said for the plaintiff that:

"The commissioners could elect whether to treat the county or the parties as their debtor, and if they wished to hold the parties they must discharge the county by repaying what it had paid." (Sup. Brief for Plaintiff, p. 11.)

The facts do not, in my opinion, warrant a finding that the commissioners at any time elected to hold the county, rather than the parties, responsible for their fees. Their attitude throughout seems to have been that they were looking to the parties for their compensation, and were not interested as to the proportions in which it was divided between the parties.

As to the reasonableness of the amount charged, namely, $27,000: At the incomplete hearing before Mr. Justice Loring evidence was submitted that such amount was reasonable. Evidence to the same effect is offered in the agreed facts; and I admit it. No witness ever testified that the sum charged by the commissioners was unreasonably high; and no such evidence is now offered. The absence of it is significant. While the amount charged seems large, an examination of the commissioners' bills contained in Exhibit A shows that a great deal of work was done. Upon the record, and in the absence of evidence to the contrary, said amount appears to have been reasonable; and I so find.

[3, 4] The plaintiff contends, however, that there has been a judicial determination by the Supreme Judicial Court that reasonable compensation for the commissioners was $8,750, and no more. The essential facts on which this contention is based are as follows: The original suit (Gloucester Water Co. v. Gloucester), having been sent back by the court in banc, after the first appeal, "for hearing on the amount to which the petitioner is entitled by its payment of the costs charged by the commissioners" (Gloucester Water Supply Co. v. Gloucester, 179 Mass. at page 384, 60 N. E. 982), came on for hearing in the Supreme Judicial Court before Mr. Justice Loring. At that time, by reason of the act of 1901 (St. 1901, c. 366), the entire compensation of the commissioners had become chargeable on the county. After some testimony had been offered as to the amount of work done by the commissioners and the reasonableness of their charges, counsel for the water company and the city represented to the court that, if $8,750 could be allowed from the county treasury as compensation to the commissioners, the parties would adjust the rest of the commissioners' bill between themselves. The court thereupon expressed its willingness to pass a decree ordering payment to that amount to be made by the county. That was done; and the hearing was concluded, without the merits having been fully heard, on the understanding by all parties present that the $8,750 would be turned over to the plaintiff, that the parties would agree as to the apportionment of the balance of the bill, viz., $18,250, and that the matter was satisfactorily settled. Subsequently the city denied the authority of its counsel to make such an agreement. This repudiation was represented to Mr. Justice Loring; and he thereupon made a further decree vacating his previous one, on account of the mistake on which it had been based, and providing that if this plaintiff (the water company) should repay to the county the $8,750, which it had meanwhile received, the report should be recommitted to the commissioners to report the amount of their compensation to be paid by the parties; but that, if the plaintiff did not repay such sum, it should have no further right to reimbursement from the city in respect to the sums paid by it to the commissioners. The plaintiff

did not refund the money. The court in banc reversed this second decree upon the ground that, in the absence of an actual contract relating to it—upon which point, as has been said, no evidence was taken—the compensation of the commissioners was to be fixed by the court, not by the commissioners, and to be paid by the county, not by the parties.

The plaintiff now contends that because the second decree was reversed by the court in banc, though upon another point in it, that part of it which set aside the first decree failed, that the first decree has therefore not been legally revoked, is now, in full force, and conclusively adjudicates, as between this plaintiff and this defendant, that the total sum which he was entitled to receive for his services as commissioner was $2,625, instead of $8,500, which he has in fact received.

The plaintiff's case upon this important point seems to me to be technical and unmeritorious. In fact, Mr. Justice Loring never did determine the amount of reasonable compensation. He has said so himself.

"I allowed compensation to the commissioners to be paid by the county of Essex on the statement which was made to me that if that allowance was made the whole matter would be taken care of by the parties to the suit. I am now informed that the statement was not authorized by the defendant.

"This allowance, having been made by me under a misapprehension, may be set aside if the plaintiff elects to refund to the county treasury the money received by it." (Exhibit A, page 2.)

[5] The plaintiff endeavors to give the proceedings before Mr. Justice Loring an effect which neither he nor any party at that time supposed that such proceedings had. The defendant has in fact received no more than he was justly entitled to. I do not think that the record in the Supreme Judicial Court requires me to assume otherwise. It is true that the second decree (entered April 13, 1903) was appealed from, and that the subsequent record shows only, "Decree reversed." But a decree in equity is not a single indivisible thing like the ordinary judgment at law. It frequently incorporates several distinct matters. An appeal may be upon one or more points only, or against the whole decree. The city's appeal was from the decree "ordering that the report of the commissioners be recommitted to the commissioners to report to the court the amount of their compensation to be paid by the parties to this proceeding." 185 Mass. 536, 70 N. E. 1015. On this appeal only the part of the decree appealed from was affected or could be attacked by the appellant. 2 Daniell's Chancery Practice, p. 1490. The order, "Decree reversed," related only to the part of the decree appealed from. The rest of the decree remained in force. Moreover, if necessary, the opinion accompanying the reversal may be looked at to determine on what grounds it was made and to what extent the decree below was affected thereby. Coyle v. Taunton Safe Deposit & Trust Co., Banker & Tradesman (Mass.) 103 N. E. 288, December 27, 1913. Neither in fact nor in law has the defendant been overpaid.

[6] The plaintiff further contends that the overpayment of fees was exacted by what amounted in law to duress or coercion, on the part of a public officer. As I have found and ruled that the fees paid were no more than the commissioners were legally entitled to receive, the

principal support of this contention fails. Even assuming, however, that the fees charged were excessive, it does not seem to me that they were exacted by duress or coercion. There is, I think, a clear distinction in this respect between arbitrators agreed upon by the parties when no proceeding in court is pending, and commissioners appointed in a pending cause by a court which has jurisdiction of the parties and control over its appointees. In the former case, the prevailing party is practically obliged to pay the fees charged in order to obtain the decision. In the latter case, there is no such necessity; it being already before the court, enforceable orders can be obtained against the commissioners in respect to their report and their compensation.

"These commissioners were officers of the court appointed under a special statute, and they were not, by virtue of their appointment, in contractual relations with either of the parties. The most that they could ultimately expect under the existing practice was that the court, by proper orders if necessary, would make provisions for their reasonable compensation. If no statute were passed, they might expect that this compensation would come from the parties under an order of the court." Knowlton, C. J., Gloucester Water Supply Co. v. Gloucester, supra.

There was no necessity for the plaintiff to pay the $25,000 when it did so; it then raised no objection to the amount of the fees and made the payment voluntarily; that amount was within the control of the court appointing the commissioners; had the plaintiff desired, it could have applied to the court for orders, directing the commissioners to submit or to file their report, and settling their compensation. Mr. Norman, acting for the plaintiff, undoubtedly supposed, at the time when the payment was made, that the practice in the Newburyport case was to be followed. He assumed that the commissioners had power to fix their fees, was very keen to see the report, and made the payment out of impulsive curiosity, and, as his counsel put it to him, on his own responsibility for the consequences, rather than under any duress or coercion.

[7] The plaintiff finally contends that, even if the fees paid were reasonable and were not exacted by duress or coercion, they were nevertheless paid and received under such a mistake of fact as gives the plaintiff a right to recover in this action. Mr. Norman, at the time when he made the payment, supposed that there was an actual agreement between the parties, under which the plaintiff would be reimbursed for the payment of so much of the fees as might be put upon the city, and that an obligation to do so was imposed upon the city by law. The evidence offered on page 4 of the agreed statement of facts is admitted. The commissioners held the same views and supposed that the plaintiff was obligated to pay their fees in the first instance and would be repaid by the city such part thereof as should eventually be charged against the city. The commissioners and Mr. Norman were mistaken, if at all, not as to the amount or validity of their claim, but as to the plaintiff's duty to pay and right to reimbursement.

Assuming that there was a mistake of fact, it is not of such character as to give the plaintiff the right to recover in this action. To allow such recovery would deprive the defendant of about two-thirds of his just pay for work done by him; for he now has no means of re-

covering from the city or the county any portion of what he may be compelled to return to the plaintiff. The situation is such that either he or the plaintiff must lose the amount in controversy; and there seems to be no sufficient reason for putting the loss upon him.

As the broad grounds above stated are sufficient to dispose of the matter, there is no necessity for me to pass on the questions of estoppel, nor to decide whether the plaintiff's conduct in not refunding the money received from the county, nor prosecuting the suit against the city, precludes it from maintaining this action.

In accordance with the views above stated, I understand that I have dealt with the requests of the parties for rulings, which may be referred to in connection herewith, as follows:

Of the plaintiff's requests I have refused the first eight, the thirteenth, the fourteenth, and the "request for finding of fact," which I have numbered 15. I regard it as unnecessary to pass upon the ninth, tenth, eleventh, and twelfth of the plaintiff's requests.

Of the defendant's requests I have refused the first, because I do not think it states the actual contract exactly as I have found it to be. The second and third are given, and the fourth is given as modified by adding "and which would entitle the plaintiff to recover herein." Of the further findings of facts requested by the defendant in its briefs in reply, I give 3 and 13. The fourteenth I regard as immaterial. Of the rulings of law requested by the defendant I give 1, substituting for the word "implied" the word "actual" or "tacit." I give 2, 3, and 7. The others I regard it as unnecessary to pass upon.

Judgment for defendant.